PEOPLE *v.* REINITZ.

*(Court of General Sessions, New York County.* June 20, 1889.)

FORGERY—WHAT CONSTITUTES—FILLING CHECKS SIGNED IN BLANK.
One who has authority to fill out checks signed in blank "for his own purposes,
whenever he wanted any money," is not guilty of forgery by filling up such checks
for large amounts, drawing the money, and immediately leaving the country, no
matter what his intent may be in so doing.

On motion to direct verdict of acquittal.

Indictment of Ignatz Reinitz for forgery. Defendant, formerly a cigar dealer of New York city, was a correspondent of D. Baez & Co., of Key West, Fla. Baez was in the habit of sending checks to a bank in Key West, signed in blank, to defendant, who had authority to fill in the name of the payee and the amount. Baez and defendant were in the habit of exchanging accommodation checks. In January, 1889, defendant received from Baez three checks, signed and dated, but not otherwise filled out. He filled them out to his own order for amounts aggregating over $7,000, cashed them at the Commercial National Bank, and almost immediately left for Europe with his family. He was extradited from England on the charge of forgery in filling out the checks, as was alleged, beyond the scope of his authority. He was placed on trial before Judge MARTINE and a jury in this court. Baez, as a witness for the people, testified that he sent the blank checks to defendant for three purposes: (1) To meet any drafts which Baez might draw on him in New York; (2) to pay for any bills which Baez might contract for merchandise purchased in New York; and (3) for defendant to use "for his own purposes, whenever he wanted any money." Baez testified, in answer to other questions: "He [defendant] had the right to use the money for the benefit of both of us,—our mutual benefit." Motion was thereupon made by counsel for defendant that the court advise an acquittal on the ground that there was no proof of forgery, as the filling up of the checks was fully authorized. The people, in opposition, contended that it was a question for the jury as to whether the authorization was simply for specific purposes, and as to whether defendant had filled up the checks for a fraudulent purpose and beyond his authority.

*James Fitzgerald,* Asst. Dist. Atty., for the People. *Charles W. Brooke* and *Benno Loewy,* for defendant.

MARTINE, J. I have given the case some consideration since last evening, and have examined such authorities as have been suggested to me, and such as I could find upon this question. There has also been called to my attention a memorandum of Lord Chief Justice COLERIDGE upon granting this extradition, and, of course, I felt in duty bound to examine that, and see if that threw any light upon this question. I am sorry to say it does not, nor, indeed, do I believe that if all the facts had been presented to the lord chief justice that are now presented to me he would have granted the warrant. The facts presented to him were two: *First,* that the defendant had power and authority to use these checks under two conditions,—one was that the defendant was to purchase goods for Baez, and fill in the vendor of the goods and the amount. There is no proof here of any such thing, and, of course, if that were the fact, no one could dispute that the position of the lord chief justice was the correct one. The other was that Baez should draw bills on Reinitz, and he should raise money by check in order to meet the bills. There is proof that Baez was to draw bills, but there is no suggestion of that further condition under which he was to be authorized to fill up checks for his own benefit, or if he desired to use any money for his own purposes. If that third condition had been before him, I doubt whether the action of the lord chief justice would have been as it was, and I believe under these circumstances the defendant would have been still under that jurisdiction. The purpose of the pleader, in pleading this as a case of forgery, is manifest. This defendant could not have been brought from that jurisdiction unless it had been so pleaded. But that should not alter the situation here, and should not make a case of forgery unless it be one.

Let us see. Is it a case of forgery? I am entirely with the proposition of the people that a person who exceeds his authority in filling up a paper of this character would be guilty of forgery. If he has specific authority and exceeds it, to-wit, if he had authority to fill up a check to pay a certain bill, and

he filled it up to pay another, or if he had authority to fill up a check for a certain amount, and filled it up for a larger amount, either of those circumstances would make it forgery. There are a good many other circumstances under which it might be forgery. But did the defendant exceed his authority? The people say, "Yes," because he filled this check up to his own order, and at the time had a fraudulent intent. The case is a very narrow one. It stands upon a razor's edge, in effect. I am inclined to the belief that the contention of the people is not a proper one, and that it would not be safe to hold that, where a person gives to another an authority at any time he may see fit to fill up a blank draft or order for the payment of money in his own name and for his own purpose, he may found a charge of forgery on the use he may make of that authority given to him. At first blush I was inclined to the belief that there might be a question for this jury whether or not it was forgery, if the defendant had a fraudulent intent at the time of filling in that check. But on the whole case, and in view of the positive and definite statement of the witness Baez, in which he says that the defendant had authority to fill up the check for his own benefit; that the understanding was that they were to accommodate each other,—I do not think there is a case for the jury. Of course I do not pretend to say that there was an arrangement existing between these people which might make them partners in any sense, but even then it could not be a forgery by one partner as against another. But upon this whole testimony I am satisfied that it would be error to hold this to be a case of forgery, in view of this positive authority given by this witness to this defendant. I shall therefore advise the jury to acquit the defendant.